# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA L. McCASLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-413-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Virginia L. McCasland, seeks judicial review of a denial of disability insurance benefits by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

## I. Procedural Background

Ms. McCasland filed her application for disability insurance benefits in January 2005, and the Social Security Administration denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #14] (AR) at 9-18. The Appeals Council denied Ms. McCasland's request for review. AR 4-7. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. The ALJ first determined that Ms. McCasland had not engaged in substantial gainful activity at any time relevant to the decision. AR 14. At step two, the ALJ determined that Ms. McCasland has severe impairments affecting her back, neck, and shoulders in addition to bilateral carpal tunnel syndrome. AR 14. At step three, the ALJ found that Ms. McCasland's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

The ALJ next determined Ms. McCasland's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb, balance, kneel, stoop, crawl and crouch. She can frequently reach, finger, and feel with hands, but can do no overhead work with either left or right upper extremity.

AR 16. At step four, the ALJ concluded that Ms. McCasland can perform her past relevant work as assembly supervisor. AR 18.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.

2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. McCasland raises three issues on appeal: (1) whether the ALJ erred in relying on testimony of a vocational expert (VE) which conflicted with information provided in the Dictionary of Occupational Titles (DOT); (2) whether the ALJ's credibility assessment is supported by substantial evidence; (3) whether the ALJ erred in failing to evaluate Ms. McCasland's obesity; and (4) whether the ALJ erred in failing to follow agency regulations in determining Ms. McCasland's RFC.

### V. Analysis

#### A. The VE's Testimony

Ms. McCasland's first argument is two-fold. First she contends that the VE's testimony regarding her ability to perform her past relevant work conflicts with information in the DOT listings. Second, she contends that the VE should have considered certain "accommodations" her employer made which, she says, allowed her to continue working.

"An ALJ does have a duty to investigate and obtain a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert testimony as substantial evidence." *Hackett v. Barnhart*, 475 F.3d 1166, 1171 (10th Cir. 2007) (*citing Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999)). *See also* SSR 00-4p, 2000WL 1898704 (Dec. 4, 2000) (ALJ must inquire about and resolve any conflicts between a VE's testimony regarding a job and the description of that job in the DOT).

The VE testified that Ms. McCasland had worked as an Assembly Supervisor. He further testified that the DOT classifies Assembly Supervisor as "light." AR 364. This testimony is consistent with information in the DOT. *See* DICOT 739.137-010, 1991 WL 680083 (1991) (Assembly Supervisor is light work). Nevertheless, Ms. McCasland contends that the manner in which she performed her specific job as Assembly Supervisor required the ability to perform at the medium strength level. This contention is based on a Work History Report in which she wrote:

> Sometimes I would have to lift boxes, but nothing over 50 pounds. I didn't have to carry these things any farther than three or four feet. I rarely had to do this, only if we were training.

4

AR 64. Ms. McCasland added, however, that the heaviest weight she lifted was generally 20 pounds and that she frequently lifted less than 10 pounds. AR 64. Moreover, an ALJ's decision that a claimant can perform past relevant work is adequately supported if the evidence indicates that the claimant can do that past work either as it was actually preformed or as it is typically performed in the national economy. *See Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993); *see also* SSR 82-61, 1982 WL 31387(1982) (claimant is not disabled if she retains the RFC to perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy).

Ms. McCasland contends that her employer made special accommodations for her, such as allowing her to go to medical appointments without taking vacation or sick leave. She further states that she was sometimes away from work for half a day for these appointments. Ms. McCasland contends the VE should have considered the rules governing a "sheltered workshop" in determining her ability to perform her past relevant work. She cites agency regulations in support of this argument. This contention also fails. The regulation Ms. McCasland cites offers guidance in determining whether a claimant has been engaged in substantial gainful activity and whether the claimant is able to sustain substantial gainful activity in the future. One consideration is whether the claimant has been or is working "under special conditions":

> If your work is done under special conditions. The work you are doing may
> be done under special conditions that take into account your impairment, such
> as work done in a sheltered workshop or as a patient in a hospital. If your

5

> work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful employment.

20 C.F.R.§ 404.1573(c). In this case, there is no evidence that Ms. McCasland's past relevant work was performed in a "sheltered" environment. Moreover, even if Ms. McCasland's past relevant work was performed in a sheltered facility, that fact alone does not support her contention that the VE's testimony was faulty. Neither the job requirements of Assembly Supervisor nor Ms. McCasland's RFC would change based on the nature of the facility in which she worked. Ms. McCasland's first issue does not provide a basis for reversal.

### B. The ALJ's Credibility Assessment

The ALJ found that Ms. McCasland's medically determinable impairments "could reasonably be expected to produce some of the alleged symptoms," but that Ms. McCasland's statements as to the "intensity, persistence and limiting effects" of her symptoms "are not credible to the extent they are inconsistent with the residual functional capacity assessment." AR 17.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the

6

claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.*, 834 F.2d at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

In assessing credibility, the ALJ considered Ms. McCasland's complaints of residual back pain after her second back surgery. The ALJ noted that Ms. McCasland had used no

7

pain medication during the three-month period before the hearing. AR 16.[1] The ALJ did not credit the alleged severity of Ms. McCasland's complaints, however, because her treating physician released her to return to work, and she did return to work. AR 17. The ALJ also considered the conclusions of an examining medical consultant, Dr. Robin Hall. Dr. Hall reported that Ms. McCasland was able to move on and off the examining table easily, that she had normal hand skills, that she had no focal or sensory deficits, and that she was able to walk with a stable, steady gait. AR 17. *See also* AR 208-214. Finally, the ALJ cited the progress notes submitted by Ms. McCasland's own doctor, T. W. Essex, D.O. Dr. Essex advised her to increase her activity. AR 297. The ALJ found this advice to be inconsistent with Ms. McCasland's complaints of severe pain. The evidence cited by the ALJ in support of her credibility findings is substantial, and reversal of the Commissioner's final decision is not warranted on this ground.

### C. The ALJ's Failure to Evaluate Obesity

Ms. McCasland next contends that the ALJ erred in failing to evaluate the effects of her obesity on functional limitations. When a claimant alleges disability based in part on obesity, an ALJ is instructed to consider the effects of obesity at each step of the sequential evaluation. *See* SSR 02-1p, 2000 WL 628049 (September 12, 2002). At step two, an ALJ must decide whether a claimant's obesity is severe either alone or in combination with other impairments:

---

[1] The ALJ noted that Ms. McCasland had taken Lortab in the past, but that this medication caused nausea. AR 16.

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. (For children applying for disability under title XVI, we will find that obesity is a "severe" impairment when it causes more than minimal functional limitations.) We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning. (See SSR 85-28, "Titles II and XVI: Medical Impairments That Are Not Severe" and SSR 96-3p, "Titles II and XVI: Considering Allegations of Pain and Other Symptoms In Determining Whether a Medically Determinable Impairment Is Severe.") Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities (or, for a child applying under title XVI, if it causes no more than minimal functional limitations).
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2000 WL 628049 at *4.

This regulation does not, however, shift the burden of proof for steps two through four from the claimant to the ALJ. *See Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993) (the claimant bears the burden of proof through step four of the analysis). Thus, Ms. McCasland bore the burden of proving at step two that her obesity, alone or in combination with other impairments, is severe. Not only did she fail to present such evidence, she also failed to identify obesity as an impairment affecting her ability to engage in substantial gainful employment. Although some of Ms. McCasland's medical providers diagnosed obesity, none stated that Ms. McCasland's obesity exacerbated any of the functional

9

limitations attributable to her other medical conditions. The Commissioner's decision is not subject to reversal on this point.

### D. The ALJ's RFC Determination

Ms. McCasland contends that the ALJ erred in failing to follow the guidance of SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996) in determining Ms. McCasland's RFC. Ms. McCasland states that the ALJ's assessment did not include a discussion of pain, failed to include hand/wrist limitations in the hypothetical question to the VE, and did not address Ms. McCasland's frequent absences from work.

In determining Ms. McCasland's RFC, the ALJ discussed the medical evidence including the records of her two back surgeries, spinal injections she received for back pain, and the fact that she has been diagnosed with carpal tunnel syndrome. AR 16-17. The ALJ considered Ms. McCasland's reported pain and adequately assessed her credibility regarding that pain. AR 17. As for work absences, Ms. McCasland testified that she would probably not be able to stay at her former work site on "bad days," which she allegedly experiences three or four days per month. AR 350. Ms. McCasland offered no proof, other than her testimony, that she would be unable to work three or four days per month, nor does she offer any proof that such absences would preclude her from pursuing her past relevant work. Moreover, Ms. McCasland was able to return to work after her second back surgery, and she continued to work an additional six months. At that time, she chose early retirement and received a financial incentive to do so. The ALJ followed the steps outlined in SSR 96-8p

in assessing Ms. McCasland's functional limitations. In sum, Ms. McCasland has not shown any basis for reversing the Commissioner's final decision.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by June __4th__, 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __14th__ day of May, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE